OPINION
 

 Per Curiam:
 

 Appellant was a non-tenured professor at the University of Nevada, Reno, when he received 369 days’ notice that his yearly contract would not be renewed. Appellant brought suit over the termination of his employment in federal and state courts. After the federal action was dismissed, respondents moved for summary judgment in state court on the basis of issue preclusion. The state district court granted the motion, concluding that issue preclusion prevented appellant from pursuing his claims in state court. The state court also granted respondents’ motion for attorney’s fees and costs incurred from the date appellant rejected respondents’ offer of judgment. Appellant appeals the summary judgment and the award of attorney’s fees. We conclude that the district court properly relied on issue preclusion in granting summary judgment and did not abuse its discretion in awarding attorney’s fees.
 

 
 *418
 

 FACTS
 

 Appellant’s employment with the University of Nevada, Reno, began on or about July 15, 1993, when he began working as a part-time professor. On July 1, 1994, appellant beeame employed at the university in a full-time, non-tenured position. On June 27, 1995, appellant was presented by a supervisor with a notice of non-reappointment to employment and a terminal contract. On June 30, 1996, 369 days later, appellant’s employment at the university ended.
 

 Appellant’s contract incorporated as part of its terms the University and Community College System of Nevada Code (hereafter “Code”).
 
 [1]
 
 Code section 5.9.1 provides that “[notice] of non[-]reappointment to employment of nontenured faculty at the University of Nevada, Reno . . . shall be given . . . [a]t least 365 calendar days in advance of the termination of each succeeding employment contract of an academic or fiscal year’s duration after the second year of service.” Code section 5.7.2 states that “[a]ny decision which involves the non[-]reappointment to employment of faculty as provided in Subsections 5.4.2, 5.8.2, 5.9.1 and 5.9.2 of the [Code] ... is not subject to review by grievance procedures.”
 

 After termination of his employment with the university, appellant filed lawsuits against respondents in federal and state courts. The federal action included three causes of action: deprivation of constitutionally protected liberty or property interests without due process of law; conspiracy to deprive constitutionally protected liberty or property interests without due process of law; and a pendent state law claim alleging that respondents ignored his evaluations, failed to give him a grievance procedure and denied him the benefits of his employment. The state action included three causes of action: breach of contract, breach of covenant of good faith and fair dealing, and negligent supervision.
 

 The federal court dismissed the federal action, concluding that
 
 *419
 
 respondents were not obligated to provide anything other than the written notice they provided to appellant, that respondents were under no obligation to renew appellant’s contract, and that respondents were under no duty to heed appellant’s evaluations or give him a grievance procedure. Approximately one year after dismissal of the federal action, respondents filed a motion for summary judgment in the state action. The state court granted the motion, concluding that issue preclusion prevented appellant from pursuing his claims in state court. The district court also granted respondents’ motion for attorney’s fees and costs incurred since the time appellant rejected respondents’ offer of judgment. Appellant appeals the summary judgment and the award of attorney’s fees.
 

 DISCUSSION
 

 I.
 
 Summary judgment
 

 “[A]n order granting summary judgment is reviewed de novo.” Executive Mgmt. v. Ticor Title Ins. Co., 114 Nev. 823, 834, 963 P.2d 465, 473 (1998) (citing Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989)).
 

 Issue preclusion, or collateral estoppel,
 
 [2]
 
 is a proper basis for granting summary judgment.
 
 See
 
 Paradise Palms v. Paradise Homes, 89 Nev. 27, 505 P.2d 596 (1973). In
 
 Executive Management,
 
 we clarified the three-part test for issue preclusion as follows:
 

 “(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation.” . . . [W]e hereafter construe this language as stating the applicable test for issue preclusion, rather than for res judicata which encompasses the rule of claim preclusion.
 

 Executive Management,
 
 114 Nev. at 835-36, 963 P.2d at 473-74
 
 *420
 
 (quoting University of Nevada v. Tarkanian, 110 Nev. 581, 598, 879 P.2d 1180, 1191 (1994)) (citing Bernhard v. Bank of America National Trust and Savings Ass’n, 122 P.2d 892 (Cal. 1942)). “ ‘ “The general rule of issue preclusion is that if an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties.” ’ ”
 
 Executive Management,
 
 114 Nev. at 835, 963 P.2d at 473 (quoting
 
 Tarkanian,
 
 110 Nev. at 599, 879 P.2d at 1191) (quoting Charles A. Wright, Law of Federal Courts § 100A, at 682 (4th ed. 1983)). “ ‘The doctrine provides that any issue that was
 
 actually and necessarily litigated
 
 in [case I] will be estopped from being relitigated in [case II].’ ”
 
 Executive Management,
 
 114 Nev. at 835, 963 P.2d at 473 (quoting
 
 Tarkanian,
 
 110 Nev. at 599, 879 P.2d at 1191). “Unlike claim preclusion, issue preclusion ‘does not apply to matters which could have been litigated but were not.’ ”
 
 Executive Management,
 
 114 Nev. at 835, 963 P.2d at 473 (quoting Pomeroy v. Waitkus, 183 Colo. 344, 517 P.2d 396, 399 (1974)) (footnote omitted).
 

 Appellant contends that issue preclusion does not apply to his state action because the issues in the federal case were not identical to the issues in his state action. Specifically, appellant contends that an issue from his state action, breach of employment contract by failure to follow personnel procedures contained in the Code and university and departmental bylaws (hereafter “Bylaws”), is not identical to the issue in the federal action of whether the Code and Bylaws created a protected property interest. Appellant concedes that the two issues may have overlapping analysis, but asserts that the issues are nevertheless not identical and therefore issue preclusion cannot apply.
 

 We conclude that appellant’s contention lacks merit. Issue preclusion may apply “even though the causes of action are substantially different, if the same fact issue is presented.” Clark v. Clark, 80 Nev. 52, 56, 389 P.2d 69, 71 (1964). The district court correctly applied the doctrine of issue preclusion based on appellant’s own concession that identical facts supported both the federal and - state actions. Appellant again concedes on appeal that identical facts supported the federal and state actions. We note, as do respondents, that appellant uses the same arguments in this appeal as he used in response to the motion to dismiss the federal case.
 
 [3]
 
 Based on our review of the record, we conclude that, in
 
 *421
 
 essence, the common issue in both the federal and state actions is whether respondents, in terminating appellant’s employment, were obligated to do anything else in addition to what they did. Because this common issue “ ‘ “was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties.” ’ ”
 
 Executive Management,
 
 114 Nev. at 835, 963 P.2d at 473 (citations omitted). The federal court’s minute order makes it clear that the federal court made a determination on that common issue.
 
 [4]
 
 The minute order stated as follows:
 

 We have found nothing in the case law, the Nevada Revised Statutes, the University Code, or the University By-Laws [sic] providing an untenured faculty member anything other than written notice before termination. . . . [Respondents] were under no obligation whatsoever to renew [appellant’s] contract, made no promises to renew it, and could decide not to renew it even for petty and malicious reasons.
 

 . . . But [Respondents] were under no duty to heed his evaluations (for purposes of determining whether to renew his contract) or to give him a grievance procedure.
 

 Because the common issue of whether respondents did what they were obligated to do had already been litigated and determined in a final judgment of the federal court, we conclude that the district court did not err in granting summary judgment on the grounds of issue preclusion.
 

 We note also that we agree with respondents’ alternative contention that summary judgment could have been appropriately
 
 *422
 
 granted on the grounds that no genuine issue of material fact remained as to both the breach of contract claim and the breach of the covenant of good faith and fair dealing claim. Respondents contend that there were no disputed facts material to either claim: appellant conceded that he was non-tenured, that the Code was made a part of his employment contract, and that he received notice of non-reappointment 369 days prior to his termination. We agree that the district court could have concluded as a matter of law, based on reading the plain language of the contract, which mentions the Code but makes no mention of the Bylaws, that the Code was incorporated into the terms of the contract but the Bylaws were not.
 
 [5]
 
 Because the application of the Bylaws was thus irrelevant, since they were not part of the contract, any disputed factual issues over Bylaw procedures were likewise irrelevant and would not preclude summary judgment. Summary judgment would thus have been proper because all factual issues concerning the Code alone, and not the Bylaws, were non-disputed: namely, Code section 5.9.1 provided that appellant, as a non-tenured faculty member, was entitled to receive at least 365 days’ notice of termination; and Code section 5.7.2 provided that when appellant received this minimal notice under Code section 5.9.1, he was not entitled to the university’s grievance procedures. Because there was no dispute that appellant received his notice 369 days prior to termination, the district court could have properly concluded that respondents fulfilled the contract. Hence, as a matter of law, respondents did not breach the contract and could not have breached the implied covenant of good faith and fair dealing.
 

 II.
 
 Attorney’s fees
 

 Appellant contends that the district court abused its discretion in awarding attorney’s fees to respondents, because respondents’
 
 *423
 
 offer of judgment was not reasonable in its timing and appellant’s rejection of the offer was not unreasonable or in bad faith. Appellant contends that respondents’ failure to raise, or give notice of their intent to raise, the issue preclusion defense earlier unfairly deprived him of valuable information which could have impacted his decision of whether to accept respondents’ offer. This failure to raise the issue preclusion defense earlier, appellant argues, is analogous to the withholding of information in Trustees, Carpenters v. Better Building Co., 101 Nev. 742, 746, 710 P.2d 1379, 1382 (1995).
 

 In
 
 Trustees,
 
 the district court refused to award attorney’s fees under NRCP 68, concluding that the offeree’s rejection of the offer of judgment was not unreasonable or in bad faith, because information essential to the offeree’s decision to accept or reject an offer of judgment was available only to the offeror and was not disclosed to the offeree until nine months after the offer of judgment was made.
 
 Id.
 
 Similarly, appellant argues that his rejection of respondents’ offer of judgment could not be unreasonable, because respondents at the time had not disclosed to him that they would raise the issue preclusion defense. Further, appellant argues that respondents’ failure to give notice of the issue preclusion defense prior to making the offer makes their offer unreasonable in its timing, pointing out that respondents’ extensive discovery costs and attorney’s fees could have been avoided had respondents filed their motion for summary judgment soon after the federal case was dismissed, rather than a year later.
 

 In Beattie v. Thomas, 99 Nev. 579, 588, 668 P.2d 268, 274 (1983), we stated that the trial court should consider the following factors in exercising its discretion regarding an NRCP 68 award of attorney’s fees:
 

 (1) whether the plaintiff’s claim was brought in good faith;
 

 (2) whether the defendant’s offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff’s decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.
 

 Where the district court properly considers these
 
 Beattie
 
 factors, the award of attorney’s fees is discretionary and “will not be disturbed absent a clear abuse.” Bidart v. American Title, 103 Nev. 175, 179, 734 P.2d 732, 735 (1987) (citing
 
 Trustees,
 
 101 Nev. at 746, 710 P.2d at 1382).
 

 Upon reviewing the record, we conclude that the district court did not abuse its discretion in applying the
 
 Beattie
 
 factors and
 
 *424
 
 awarding attorney’s fees to respondents. Respondents’ failure to bring the issue preclusion defense. earlier did not constitute a withholding of information that rendered appellant’s rejection of the offer of judgment reasonable, because respondents did not actually withhold any information about the federal case from appellant. Appellant had just as much information about the federal dismissal as did respondents. Appellant’s failure to anticipate respondents’ defense does not amount to a withholding of information as occurred in
 
 Trustees.
 
 Therefore, we disagree that the district court abused its discretion in concluding that appellant unreasonably rejected the offer of judgment. Because the district court applied all of the
 
 Beattie
 
 factors without clear abuse of discretion, we uphold the award of attorney’s fees.
 

 CONCLUSION
 

 The common issue in appellant’s federal and state actions was simply whether respondents did what they were obligated to do, under the terms of appellant’s employment contract. Because this common issue was litigated and determined in the federal action, the state district court properly granted summary judgment on the grounds of issue preclusion. The district court did not abuse its discretion in awarding attorney’s fees to respondents, because the district court correctly applied the
 
 Beattie
 
 factors in making the award.
 

 Based on the foregoing, we affirm the district court’s order granting summary judgment and the order awarding attorney’s fees to respondents.
 

 [1]
 

 The relevant portions of appellant’s contract are as follows:
 

 The University and Community College System of Nevada Code requires that all terms and conditions of employment be specified in this document. Any other terms, understandings, promises, prior negotiations or representations, or conditions not specified in the REMARKS section above, or attached to and made a part of this contract, shall not be considered a part of the contract of employment.
 

 The University and Community College System of Nevada Code, the official document governing personnel matters and procedures concerning the professional staff, is a regularly published document and is available at each institution. The Code is incorporated herein and by this reference made a part of this contract. This contract is not binding or of any legal effect until duly executed by both the appointee and the appointing officer.
 

 [2]
 

 To minimize confusion, this opinion exclusively uses the term “issue preclusion” in its analysis, although “issue preclusion” and “collateral estoppel” are interchangeable terms.
 
 See
 
 University of Nevada v. Tarkanian, 110 Nev. 581, 598-99, 879 P.2d 1180, 1192 (1994) (“Issue preclusion, or collateral estoppel, may be implicated when one or more of the parties to an earlier suit are involved in subsequent litigation on a different claim. Issues that were determined in the prior litigation arise in the later suit. If the common issue was actually decided and necessary to the judgment in the earlier suit, its relitigation will be precluded”).
 

 [3]
 

 Appellant argued in his federal response and contends now on appeal the following: his argument that Code and Bylaw procedures were not followed when appellant was terminated; his argument that he was entitled to contract renewal if specific Code and Bylaw conditions were met; his argument
 
 *421
 
 construing the contract (repeated almost word for word on appeal); his argument relying on section one of the Bylaws and Code section 1.3.4 (reproduced verbatim on appeal); his argument regarding the application of Code section 5.2.1 and Bylaws 41 and 43(a); his arguments regarding the issues of the timing of his evaluation, the alleged irregularity with the signatures on the notice of non-reappointment, and his description of the university’s “regular administrative channels.”
 

 [4]
 

 Appellant contends that the federal court erred in making factual determinations in deciding a motion to dismiss and that it should have instead only made presumptions as to the truthfulness of the allegations. That may be an issue for federal appellate review of that case, but it is not an issue for this court to decide. Absent any indication in the record of a federal appeal and a subsequent reversal of the federal court’s factual findings, we accept the federal judgment as valid, pursuant to the presumption that “a judgment is valid if it is regular on its face.” Charmicor, Inc. v. Bradshaw Finance Co., 92 Nev. 310, 313, 550 P.2d 413, 415 (1976) (citing Moore v. Cherry, 90 Nev. 390, 528 P.2d 1018 (1974)).
 

 [5]
 

 Appellant contends that the Bylaws were incorporated into his contract, citing Code section 1.3.4, which states, in part: “Systems Institutions shall adopt bylaws to set forth the institution’s organizational structure and personnel policies.” This argument lacks merit because the employment contract provides only that the Code is incorporated into the contract, without making any mention of the Bylaws, and that “[a]ny other terms, understandings, promises, prior negotiations or representations, or conditions not specified in the REMARKS section above, or attached to and made a part of this contract, shall not be considered a part of the contract of employment.” Because the Bylaws are not expressly incorporated into the contract, we conclude that the oblique reference in Code section 1.3.4 does not incorporate the Bylaws into the contract. We note that Code section 3.4.2(c) states that departments may adopt bylaws implementing “additional standards for recommending academic faculty for [tenure] appointment.” However, because Code section 3.4.2 deals with appointment of tenure, not the decision to reappoint non-tenured faculty, it is inapplicable to this case.